**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHEN L. WARNER, EXECUTOR OF THE ESTATE OF GAGE W. ALLAM, *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO:      1:19-cv-00326-SPB |
| v. | ) ) | Judge Susan Paradise Baxter |
| SWEPI LP and SHELL ENERGY HOLDING GP LLC, | ) ) ) | *Electronically Filed* |
| Defendants. | ) ) | |

**MOTION TO COMPEL AND FOR SANCTIONS**

In this case to-date, Plaintiffs' counsel routinely has (i) produced documents hours before a deposition is set to commence, (ii) produced duplicative documents, even while claiming those documents to be new, (iii) produced documents for one plaintiff that clearly are for another plaintiff, (iv) produced jumbled messes of documents, (v) produced documents without bates labels, (vi) produced attorney-client privileged documents, and (vii) produced documents completely lacking any organization—all in response to document requests that were served on March 17, 2021, and despite the fact this Court set a response deadline by July 15, 2022, for all responsive documents for all plaintiffs.  Furthermore, simple questions to Plaintiffs during their depositions have revealed that they were never (i) contacted by phone by Plaintiffs' counsel to discuss the documents they needed to compile, (ii) instructed to preserve documents, and (iii) asked to look for and produce relevant and requested documents.

Additionally, despite Defendants having served interrogatories and requests for admission on all Plaintiffs on March 17, 2021, most Plaintiffs have failed to return anything

other than a form objection in response to the interrogatories, with those Plaintiffs who have provided substantive responses doing so without providing the required verification.  As for the requests for admission, Plaintiffs' counsel provided the same form objections/responses for each Plaintiff and then provided the same two form supplementations for each Plaintiff. Not until July 2022 did Plaintiffs' counsel provide anything resembling substantive responses to 10 requests for admission for some Plaintiffs, while many have not provided even those limited substantive responses. Discovery has revealed that Plaintiffs' counsel did not even provide the requests for admission (served March 17, 2021) to his clients until June 21, 2022, and did not provide the interrogatories (also served March 17, 2021) to his clients until August 12, 2022.

Put simply, Plaintiffs' compliance with their discovery obligations has been abysmal. All of the foregoing has resulted in Defendants' counsel incurring additional time and resources to, among other things, review late-produced, disorganized, and duplicative documents.  Further, Defendants' counsel have had to spend time in depositions to ask questions posed by the unanswered interrogatories or to address missing, confusing, and duplicative request for admission responses.  Additionally, Defendants' counsel have had to reserve their rights to recall numerous witnesses based on documents to be produced after the depositions, which will result in additional costs (not only of court reporter and videographer but attorney preparation time) and is an ineffective and inefficient way to conduct depositions.

Accordingly, this motion asks the Court to require Plaintiffs' counsel to speak to all of his Plaintiffs and produce all responsive documents by a date certain (September 30, 2022). Additionally, Defendants seek the imposition of a sanction against Plaintiffs' counsel in the

form of (i) an award of $10,000 for the costs incurred to-date and Plaintiffs' counsel's blatant disregard of this Court's prior Order and (ii) an Order requiring Plaintiffs' counsel to pay the costs of a court reporter and videographer for any and all renewed depositions of Plaintiffs after production of documents not produced prior to the original deposition date.

1.      Defendants served Interrogatories, Requests for Admission, and Requests for Production of Documents on all Plaintiffs in this case on March 17, 2021.[1]

2.      Plaintiffs' responses thereto should have been due by April 16, 2021.

3.      As this Court is aware, there were numerous discovery disputes raised to the objections and limited substantive responses provided by Plaintiffs, prompting the filing of legal summary judgment motions.  *See* ECF Nos. 59, 95, 98, 99.

4.      This Court issued its Opinion and Order on those dueling summary judgment motions on March 31, 2022.  ECF Nos. 86, 87.  That decision overruled numerous objections Plaintiffs had raised to certain written discovery, so the undersigned sent Plaintiffs' counsel a letter on April 5, 2022, explaining same and requesting substantive answers to those discovery requests within 20 days.  *See* **Exhibit A** hereto.[2]

5.      In response to the April 5, 2022 letter, on April 24, 2022, Plaintiffs' counsel provided additional form responses (one response in the *Walney* case and one in the *Warner*

---

[1] By signing this Motion, the undersigned certifies under penalty of perjury, pursuant to 28 U.S.C. §1746, that any facts set forth in the Motion not otherwise supported by a cited Exhibit are true and correct.

[2] As a result of discussions between counsel, the parties submitted a joint motion to the Court seeking to set June 15, 2022, as the deadline for completion of fact discovery and September 30, 2022, as the deadline to complete depositions.  ECF No. 88.  This Court granted that Motion.  ECF No. 89.  These deadlines later were extended, at Plaintiffs' counsel's urging.  *See* ¶8, *infra.*

case for all Plaintiffs in each case) to the Requests for Admission (the third form response provided to the Requests for Admission).

6.      On May 2, 2022, the undersigned sent Plaintiffs' counsel a letter detailing issues/deficiencies with the form Request for Admission responses sent April 24, 2022, and requesting that actual Plaintiff-specific responses without unfounded objections be provided by May 22, 2022—and requesting that the same unfounded objections not make their way into the allegedly-forthcoming interrogatory and document request responses.  *See* **Exhibit B** hereto.

7.      Plaintiffs' counsel responded two days later, among other things, acknowledging that the "lion's share" of the requests addressed in the letter were valid. Thus, the undersigned responded via email on May 10, 2022, stating that hopefully that same view would be taken in responding to the other outstanding discovery and requesting that Plaintiffs' counsel engage in a rolling production to meet the June 15, 2022 discovery deadline.  *See* **Exhibit C** hereto.

8.      Plaintiffs' counsel did not engage in a rolling production (or produce anything) but, instead, reached out to the undersigned on May 24, 2022, seeking to extend deadlines yet again.  The parties agreed upon a second motion to extend deadlines (which this Court granted) that set July 15, 2022, as the deadline for responses to written discovery (and required a rolling production to commence by July 5, 2022), and set November 18, 2022 as the fact deposition deadline.  ECF Nos. 93, 94.

9.      Defendants' counsel later learned that Plaintiffs' counsel did not provide the requests for admission (served March 17, 2021) to his clients to complete until June 21, 2022.

10.     On July 5, 2022, the undersigned provided to Plaintiffs' counsel, among other things, a link to an ftp site, pre-populated with Plaintiff-specific folders so that all responsive documents and written responses could be uploaded to the ftp site in an organized manner and so that everyone would know what has been produced already (as Plaintiffs' counsel did not use bates labels for any documents he produced).  *See* **Exhibit D** hereto.

11.     Plaintiffs' counsel has not used the ftp site; opting instead to send "productions" via email in a confusing, confused, duplicative, disorganized, and disjointed manner.  Plaintiffs' counsel also failed to comply with the July 15, 2022, deadline for providing responses to the pending written discovery requests.

    a.     Plaintiffs' counsel provided no productions by July 5, 2022.

    b.     Prior to July 15th, Plaintiffs' counsel only provided responses to 10 Requests for Admission for certain (but not all) Plaintiffs, but failed to provide all of the necessary information for some – such as (i) simply sending an email with "admitted" or "denied" but not sending the form identifying the items being admitted or denied, (ii) sending responses for at least one married couple that responded to fewer than the 10 requests for admission purportedly being answered, and (iii) failing to send referenced attachments to certain responses.  No interrogatory responses, written document request responses, or document productions were made.

    c.     On July 19, 2022, Plaintiffs' counsel emailed (again refusing to use the ftp site) what purportedly was another "installment" of a rolling submission (four days after the discovery deadline) of request for admission responses for 17 Plaintiffs/Plaintiff married couples.  Five of those Plaintiffs/Plaintiff married couples had submitted prior responses and of those five, three of them did not change their

responses. Moreover, Plaintiffs' counsel did not inform which of the Plaintiffs/Plaintiff married couples were submitting changes and one of those changes was dated as being submitted to Plaintiffs' counsel on June 22, 2022, but was not produced to Defendants' counsel until nearly one month later. Of the purportedly new responses, one was blank, and one was titled in the name of someone who was not even a Plaintiff. All this forced Defendants' counsel and staff to expend valuable time and resources to determine what actually was being produced and what effect, if any, it had on prior responses.

d.     On July 22, 2022, Plaintiffs' counsel sent another response to requests for admission, which responses he said were "trickling in" from his clients.

e.     For a deposition scheduled to commence at 9:30 a.m. July 25, 2022, (Monday) Plaintiffs' counsel provided a link to a "dropsend.com" download file via email on July 23, 2022, (Saturday) at 6:35 p.m. Eastern. Instead of using the ftp site, Plaintiffs' counsel forced the undersigned to access a link on his personal computer, as the "dropsend.com" link did not meet security requirements to access via a firm computer (which the undersigned informed Plaintiffs' counsel), to try to obtain documents that were supposed to be produced 10 days previously. Two of those files still would not open, requiring the undersigned to request that those be sent via email the morning of the deposition. *See* **Exhibit E** hereto.

f.     Unfortunately, this was not the only time Plaintiffs' counsel produced documents with little advance preparation time for a scheduled deposition. *See* **Exhibit F** hereto, summary chart of examples of when documents were produced in advance of depositions.

g.      On July 30, 2022, Plaintiffs' counsel attempted to send numerous files (including purportedly for Plaintiffs scheduled for deposition the week of August 1, 2022) to the undersigned via another "dropsend.com" link, to which the undersigned responded that he could not access and requested they be provided via the ftp site (a request Plaintiffs' counsel ignored, opting to send them via email instead). *See* **Exhibit G** hereto.

h.      On August 1, 2022, the undersigned wrote to Plaintiffs' counsel regarding the failure of Plaintiffs' counsel to inquire of his clients regarding documents and to produce documents provided to him by those clients. *See* **Exhibit H** hereto.

12.     A particularly egregious example of Plaintiffs' counsel's failure to produce documents timely or in an organized fashion occurred on August 26, 2022, during the deposition of Dr. Giancola.  In response to a question, just a few minutes into the deposition, as to what he did to prepare for his deposition, Dr. Giancola responded that he reviewed the emails he had provided to Attorney Altomare from the 2011/2012 timeframe.  As no such documentation had been produced, the undersigned asked Attorney Altomare where those emails were.  Attorney Altomare first claimed he did not receive those emails from Dr. Giancola but changed his answer when Dr. Giancola gave him the date and email address used to send the emails.  Attorney Altomare then claimed the emails were protected by attorney-client privilege.  But, as those emails were from 2011/2012 and were with a landowners group negotiating the lease, that objection also was overcome.  Attorney Altomare then proceeded to forward 22 emails to the undersigned which had a total of 213 emails attached to them (many of which emails also had multiple attachments – totaling

more than 450 discrete documents).  The deposition of Dr. and Mrs. Giancola had to be suspended to allow time to review and organize all of the information sent.  Importantly, though, after spending more than six hours (including overtime for staff) reviewing and attempting to de-duplicate the emails/documents, there were only 62 non-duplicative emails (nearly just ¼ the total number of emails provided by Plaintiffs' counsel).

      a.     As a result of this untimely and disorganized production, a new deposition of Dr. Giancola had to be arranged, which cost Defendants' counsel the appearance fee for the court reporter ($125.00) and videographer ($233.75) for the second deposition, which would have been unnecessary had all of the documents been produced in advance of the original deposition.

      b.     What makes this particularly egregious, beyond the untimely and disorganized production method, is that the documentation belatedly produced also applied to at least four other Plaintiffs, two of whom already had been deposed but did not produce the emails with the landowners' group.  If all of the documentation had been produced by the July 15, 2022 deadline as this Court required, the documentation produced by Dr. Giancola could have been used to prepare for and question those other Plaintiffs as well.

13.    A number of the fully-remote depositions have been delayed by technical issues suffered by Plaintiffs attempting to log into the Zoom platform used by the Court Reporting service, despite a request having been made to Plaintiffs' counsel to ensure that his clients had the technology and internet connection to allow for their remote

participation.  One deponent could not connect as she was using a Windows 98 computer and, after at least an hour of attempting to get her connected, Defendants' counsel had to cancel her deposition for that day and reschedule.  Others have had audio and/or audio-visual connection issues, including one where a paralegal from Attorney Varsek's office had to drive out to the Deponents' home to help them connect to the deposition (causing nearly two hours' delay).

14.  Throughout depositions in this case, Plaintiffs routinely have testified under oath that no one contacted them via phone to ask for documents or to explain the document requests, that they had additional documentation at their homes they had neither been asked to search for or asked to produce, and that they were not asked to provide interrogatory responses.  *See* **Exhibit I** hereto, summary chart of deposition excerpts.

a.  One example of this came from the deposition of Ms. Seltz for the Spellmans.  Her deposition occurred on July 26.  Based on questions to her in the deposition, she subsequently located and produced an additional 56 documents.

b.  During their depositions, the Ducksteins testified that their personal lawyer, Attorney Leo Stepanian, had a large number of documents regarding the title to the property they attempted to lease to SWEPI and the litigation over ownership that was ensuing at the time, but no one asked them to get that documentation (despite it being responsive to several document requests and within their control).  Additionally, they testified to having boxes of documents at home that may be responsive to document requests but, again, no one had asked them to look for or provide that documentation.

     i.     Defendants have been provided certain documentation from Attorney Stepanian but have twice requested (through Plaintiffs' counsel) the additional "boxes" of documents from the Ducksteins, without a response.

     ii.     Defendants will need to conduct the deposition of Attorney Stepanian (who is cooperating to schedule same) and will need to re-depose at least Mr. Duckstein due to the documents produced after his original deposition, which will incur additional costs for the court reporter and videographer as well as costs associated with the inefficiencies of not having all documentation prior to the initial deposition (not to mention the costs of requesting and following up with Plaintiffs' counsel regarding the non-produced documents).

     c.     Another example is from the deposition of Ms. Barrett (executor for Estate of Mr. Capenos) who located and produced six additional documents within days after her deposition—although Plaintiffs' counsel identified them as coming from a different Plaintiff, only to correct that after the undersigned asked him to confirm whether they actually were from Ms. Barrett.

     i.     Plaintiffs' counsel attempted to rectify the production for the other Plaintiff, only to produce documents still from Ms. Barrett and containing only two pages for that other Plaintiff, which two pages had been produced previously.

     d.     A number of Plaintiffs have brought to the deposition documents they had in their possession that had not been provided to Plaintiffs' counsel in advance. One such example was the Bemis Plaintiffs, who brought three folders with

documents in them.  Before opening the record, the undersigned obtained copies of those documents and reviewed them the best he could in the limited time available to integrate those documents and that information into the deposition outline/questions.   While the photocopying was going on, Plaintiffs' counsel demanded that his clients leave the deposition room and demanded that the undersigned contact the Court, without telling the undersigned why there was a need to contact the Court.  When the undersigned refused to call the Court without a discussion of the issue to be addressed with the Court, Plaintiffs' counsel called the Court's Deputy while on speaker phone and requested to speak with the Court.  When he was told the Court was not available, Plaintiffs' counsel asked a few more questions.  Then, knowing that the undersigned wanted to speak to the Court's Deputy (as the undersigned had been saying "ma'am" multiple times to be heard), Plaintiffs' counsel abruptly hung up the phone without giving the undersigned a chance to speak and then lifted his middle finger at the undersigned.  When asked whether he had just "flipped off" the undersigned, Plaintiffs' counsel responded "Yes I did."  The undersigned then contacted the Court's Deputy to explain the unexplained call to Chambers by Plaintiffs' counsel and advised of the rude and unprofessional gesture.  *See* **Exhibit J** hereto.

e.      While Plaintiffs' counsel of record in this matter is Attorney Joseph Altomare, Attorney Robert Varsek also has participated in preparation of witnesses for deposition.  However, according to witness testimony, that preparation has been minimal (some five to ten minutes, the longest being about 30 minutes), the evening before the deposition, and has not included asking for documents that have been

identified with simple questions about relevant topics, such as sale or leasing of the property, documents regarding title examination, and searching emails for documentation.

    f.  No Plaintiff has testified that Plaintiffs' counsel phoned them to explain the document categories they were to look for and produce.

  15.  Not until August 21, 2022, more than one month after this Court's deadline for completing written discovery responses, and nearly a month after depositions of Plaintiffs began, did Plaintiffs' counsel email the purported interrogatory responses on behalf of 19 Plaintiffs/Plaintiff married couples.  As it turns out, the reason for the late service is that <u>Plaintiffs' counsel did not provide the interrogatories (served March 17, 2021) to his clients for completion until August 12, 2022</u>.

    a.  One purported interrogatory response was blank; one purported response was a PDF of documents already produced; and one purported response was, instead, responses to requests for admission, which differed from the prior responses and conflicted with the testimony already provided by those Plaintiffs at their depositions the week prior.

    b.  Additional interrogatory responses were provided on August 22, 2022, but for Plaintiffs who had been deposed almost three weeks prior.

    c.  On September 1, 2022, Plaintiffs' counsel sent via email (again eschewing the ftp site) what purported to be 14 interrogatory responses "not previously sent."  However, after Defendants' counsel's assistant spent 30 minutes to review those 14 files, it was determined that all but one had been provided

previously—and the deficiencies in the prior responses, which had been conveyed to Plaintiffs' counsel previously, were not corrected.  *See* **Exhibit K** hereto.

d.      None of the interrogatory responses provided to-date have been verified.  *cf.* Fed.R.Civ.P. 33(b)(3).

16.     On August 21, 2022, Plaintiffs' counsel also provided (again via email) five additional responses to requests for admission, including at least one from a Plaintiff who already had been deposed.

17.     On August 24, 2022, Plaintiffs' counsel advised that someone other than whom he pleaded to be the executor of an estate would appear the next day to testify at that deposition.  Yet that person never appeared, and the person who did appear (the pleaded individual) had documentation that he was the executor.

18.     As noted in the multiple Suggestions of Death filed in this matter (ECF Nos. 102-104, 106), Plaintiffs' counsel filed a complaint, amended complaint, and a second amended complaint in the names of at least two Plaintiffs who died years before this case was initiated—he did not file the action in the name of the estate of those Plaintiffs.  *See* ECF No. 104 (showing Margaret S. Fleming died on August 8, 2014); ECF No. 102 (showing Jeffrey S. Irwin died on February 18, 2017).  This is further evidence of a lack of due diligence on the part of Plaintiffs' counsel.

a.      Moreover, despite Plaintiffs' counsel informing the undersigned on July 18, 2022 that Mr. Miller had passed away due to COVID-19, which email was attached to the Suggestion of Death filed at ECF No. 103, Plaintiffs' counsel contacted the undersigned the late afternoon prior to Mr. and Mrs. Miller's originally-scheduled deposition date to report that he was not able to get in touch with Mrs. Miller and that

he had attempted to reach Mr. Miller but was unsuccessful. The undersigned reminded Plaintiffs' counsel that he previously had reported that Mr. Miller was deceased. *See* **Exhibit L** hereto, statement placed on record at Mrs. Miller's failure to appear at her deposition.

19. None of the documents produced by Plaintiffs' counsel in this case have been bates labeled.

20. Every Plaintiff deponent who has been asked under oath at deposition whether anyone told him/her to preserve documents has answered in the negative.

21. The foregoing conduct of Plaintiffs' counsel falls well below the standard required of attorneys in meeting their obligations to their clients, to opposing counsel, to this Court and its Orders, and to the Federal Rules of Civil Procedure. As a result of that abysmal conduct, Defendants' counsel have had to incur additional costs and expenses and will need to incur additional costs and expenses reviewing documents produced after depositions have concluded and determining whether to re-depose multiple individuals.

22. Accordingly, Defendants request this Court issue an Order that (i) compels Plaintiffs' counsel to contact each of his clients via phone to explain the documents/ESI that are to be searched for and produced in this case and then to produce all responsive documents/ESI and all written discovery responses no later than Friday, September 30, 2022; (ii) requires Plaintiffs' counsel to pay the appearance fee and at least one hour's worth of time for the videographer for any re-deposition; (iii) requires Plaintiffs' counsel to pay the appearance fee for the court reporter and at least 5 pages worth of any transcript from any re-deposition; (iv) requires Plaintiffs' counsel to pay to Defendants' counsel, within 20 days of the date of the Order, a sanction of $10,000 for violating this Court's prior Order and to

cover the fees and costs incurred associated with reviewing, organizing, and responding to

the confusing, confused, duplicative, disorganized, and disjointed productions and conduct

exhibited to-date in discovery in this matter.[3]

23.    A form Order granting the requested relief is attached.

Respectfully submitted:

Date:   September 20, 2022                /s/ Jeremy A. Mercer
                                                          Jeremy A. Mercer, Esq. (PA 86480)
                                                          jmercer@porterwright.com
                                                          Carolyn B. McGee, Esq. (PA 208815)
                                                          cbmcgee@porterwright.com
                                                          Carrie Garrison, Esq. (PA 328915)
                                                          cgarrison@porterwright.com

                                                          PORTER WRIGHT MORRIS & ARTHUR LLP
                                                          6 PPG Place, Third Floor
                                                          Pittsburgh, Pennsylvania 15222
                                                          Tel:    (412) 235-4500
                                                          Fax:    (412) 235-4510

                                                          *Counsel for Defendants*

---

[3] Defendants take no position on whether the foregoing costs should be assessed solely against Attorney Altomare or also against Attorney Varsek.