IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN L. WARNER, Executor of the Estate of GAGE W. ALLAM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SWEPI, LP, et al., <br><br> Defendants. | ) ) ) ) ) ) ) Case No. 1:19-cv-326 ) ) ) ) ) |

**MEMORANDUM OPINION**

**Susan Paradise Baxter, United States District Judge**

Presently pending in this case are several motions by Defendants SWEPI LP and Shell Energy Holding GP LLC (collectively, "SWEPI") to compel certain discovery and to impose sanctions on Plaintiffs and their counsel for discovery related deficiencies. For the reasons that follow, these motions will be granted in part and denied in part.

I.   BACKGROUND

This case has a lengthy history owing partly to the fact that the individual plaintiffs were formerly part of a class action lawsuit that was decertified in March of 2019. The class action, which proceeded under the caption *Walney, et al. v. SWEPI LP, et al.,* No. 1:13-cv-102 (W.D. Pa.), had its own protracted history. At this juncture, many of the Plaintiffs in this case have voluntarily dismissed their claims, but more than sixty individual Plaintiffs remain. Their claims are fairly straightforward in that the Plaintiffs seek to recover amounts they believe were contractually promised to them in return for their execution of oil and gas leases in favor of SWEPI. At all times relevant to this action, Plaintiffs have been represented by Attorney Joseph E. Altomare. More recently, Mr. Altomare has been joined by his co-counsel, Robert Varsek,

1

Esq., who represented certain individuals in a separate civil action that has since been consolidated into this one. Defendants are represented by Attorneys Jeremy A. Mercer and Carolyn Batz McGee.

Because the parties are already familiar with the extensive history of this litigation, the Court will recite only those aspects that are material to a disposition of the current disputes. Relevantly, Defendants served interrogatories and requests for admission on all Plaintiffs on March 17, 2021. Plaintiffs served responses to the Requests for Admissions on May 31, 2021 and responses to the interrogatories and document requests on June 30, 2021. ECF Nos. 208-1, 208-2. In their responses, Plaintiffs objected to many of the discovery requests on the grounds that SWEPI was seeking information to support what Plaintiffs considered legally untenable arguments or defenses. The parties' discovery dispute evolved into a limited motions practice, the purpose of which was to allow the Court to decide certain legal issues that would then help determine the scope of discoverable information.

On March 31, 2022, the Court issued a Memorandum Opinion and Order which was largely decided adversely to the Plaintiffs. ECF Nos. 86, 87. As a result of the Court's ruling, many of Plaintiffs' previous objections were no longer plausible. Accordingly, it became incumbent upon the Plaintiffs to cure their discovery responses.

To that end, counsel jointly stipulated to a discovery schedule which, after further extension, established July 15, 2022 as the deadline for updated written discovery responses and November 18, 2022 as the deadline for completion of depositions. ECF Nos. 93, 94. Depositions commenced in late July 2022 and continued thereafter on a rolling basis until the November deadline. Because Mr. Altomare now resides out-of-state, it was agreed that he could appear for the depositions remotely via Zoom. The same courtesy was also extended to most

(and perhaps all) Plaintiffs, so that they would not have to travel to Mr. Mercer's office and then appear for depositions without the benefit of their attorney also being physically present.

Unfortunately, the deposition process was not a smooth one and, according to defense counsel, Plaintiffs' compliance with their pre-deposition discovery obligations was "abysmal." ECF No. 115 at 2. SWEPI summarizes the problems thusly:

> Plaintiffs' counsel routinely has (i) produced documents hours before a deposition is set to commence, (ii) produced duplicative documents, even while claiming those documents to be new, (iii) produced documents for one plaintiff that clearly are for another plaintiff, (iv) produced jumbled messes of documents, (v) produced documents without bates labels, (vi) produced attorney-client privileged documents, and (vii) produced documents completely lacking any organization . . . Furthermore, simple questions to Plaintiffs during their depositions have revealed that they were never (i) contacted by phone by Plaintiffs' counsel to discuss the documents they needed to compile, (ii) instructed to preserve documents, and (iii) asked to look for and produce relevant and requested documents.

ECF No. 115 at 1.

Accordingly, Defendants have filed a motion to compel more fulsome production from the Plaintiffs and, in addition, they have requested that sanctions be imposed against Mr. Altomare. ECF No. 115. In their motion, Defendant expound at length on Plaintiffs' discovery-related deficiencies, the details of which will not be recounted here. Instead, it will suffice to note that a sampling of the alleged deficiencies are documented in two charts which Defendants appended to their motion as exhibits F and I. *See* ECF Nos. 115-6 and 115-9.

For his part, Mr. Altomare does not deny that he and his clients failed to meet the extant case management deadlines. Similarly, he does not deny defense counsels' rightful expectation that they would have all discovery responses in hand when taking a deposition. On the other hand, Mr. Altomare *does* deny that he purposefully flouted the Court's orders. Instead, he insists that the complained-of deficiencies are "the inevitable consequence" of Mr. Mercer's "insistence that depositions be scheduled coextensively with [his own] obligation to cure what became

discovery deficiencies only upon the entry of the court's Memorandum Opinion and Order of March 31, 2022." ECF No. 208 at 3.  In other words, Mr. Altomare explains that his need to cure Plaintiffs' written discovery responses was made clear only as of March 31, 2022 and, though Mr. Altomare initially agreed to the July 15, 2022 deadline for doing so, that ultimately proved to be impracticable.  Mr. Altomare further explains that he initially thought the July 15, 2022 deadline was doable because he had been conducting polling of his clients since February 2020.  Relevantly, the docket reflects that Mr. Altomare requested modification of the case management schedule on July 7, 2022 but the Court did not immediately address that request amidst a flurry of other filings in this case. Ultimately, during a January 5, 2023 status conference, Mr. Altomare was ordered to produce any outstanding written discovery forthwith. *See* ECF No. 96, 203.

      In the meantime, the parties' discovery (and non-discovery) disputes continued to compound.  Thus, also pending before the Court at this time is the Defendants' motion to compel discovery and impose sanctions relative to seven groups of Plaintiffs who, when deposed, identified additional, discoverable material that had not previously been turned over.  ECF No. 219.  Relatedly, Defendants have filed a motion seeking spoliation sanctions as to two of the seven Plaintiffs, Robert Evans and Kathleen C. Barrett. ECF No. 224.

      Each of the foregoing motions has been briefed by both sides.  Consequently, the issues are sufficiently joined for disposition.  Although this Court commonly handles discovery-related disputes in telephonic proceedings, at present the undersigned finds it more expedient to forego further argument and decide the pending motions based on the briefs and appended exhibits. Accordingly, having now fully reviewed the parties' respective motion papers, the Court issues the rulings set forth below.

## II.  DISCUSSION

   *A. Applicable Law*

   Rule 37 of the Federal Rules of Civil Procedure allows for the filing of a motion to compel discovery responses, including answers to interrogatories and requested documents. Fed. R. Civ. P. 37(a)(3)(B). Further,

> [i]f the motion is granted -- or if the disclosure or requested discovery is provided after the motion was filed -- the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> **(iii)** other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). If a motion to compel is granted in part and denied in part, "the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

   Apart from the powers afforded under Rule 37, "[t]he Court ... has inherent power to police litigant misconduct and impose sanctions on those who abuse the judicial process." *Reilly v. Home Depot U.S.A., Inc.*, No. CV2013030NLHAMD, --- F. Supp. 3d ---, 2023 WL 3043885, at *7 (D.N.J. Apr. 20, 2023). Thus, "[w]hen a party fails to comply with the discovery rules or a court order, sanctions are available 'to penalize those whose conduct may be deemed to warrant such a sanction[.]'" *Id.* (second alteration in the original, citation omitted). *See United*

5

*States v. Wecht*, 484 F.3d 194, 217 (3d Cir. 2007) ("It is important to note that district courts have wide discretion in the management of their cases.")).

   B. *Analysis*

Here, two of three pending motions -- ECF Nos. 219 and 224 -- focus on a specific subset of Plaintiffs as to whom Defendants seek relief under Rule 37. Some of these same Plaintiffs form the basis of SWEPI's motion at ECF No. 115. Accordingly, the Court will address those individual claimants *seriatim*, as they are largely dispositive of the matters in dispute.

   **(i)   Carol Spellman Seltz as Executor of the Estate of Harry J. Spellman and Attorney in Fact for Helen Spellman**

Plaintiff Carol Spellman Seltz filed a claim in this case in her capacity as executor of the estate her father, Harry J. Spellman, and as attorney-in-fact for her mother, Helen Spellman. During her deposition on July 25, 2022, Ms. Seltz referenced previously undisclosed emails that she had exchanged with an attorney who represented her parents in connection with oil and gas leasing issues. Because SWEPI's attorney considered the emails to be discoverable information, he placed a request on the record that Mr. Altomare procure the emails and turn them over. As of January 24, 2023, Mr. Mercer still had not received the referenced emails, so he sent a letter to Mr. Altomare demanding their production no later than February 6, 2023. ECF No. 219-3.

Mr. Altomare subsequently produced some 299 pages of documents to Mr. Mercer on February 6, 2023, some of which included the requested emails. The next day, Mr. Mercer sent correspondence asking Mr. Altomare to "confirm that all emails between Ms. Seltz and the lawyer for her parents (and all attachments thereto) have been produced." ECF No. 219-4. Mr. Altomare subsequently produced an additional 331 pages on February 15, 2023, which, he claimed, constituted all of the attorney communications and attachments as well as "documents

[Ms. Seltz] found during her search which may not have previously been produced." ECF No. 219-7.

Because Mr. Altomare has made discovery productions without the use of bates stamps, SWEPI objects that Mr. Altomare's tracking responsibilities have been unfairly foisted upon defense counsel. Defendants also indicate in their motion filed at ECF No. 219 that their attorney is reviewing Ms. Seltz's productions to see if any additional documentation appears to be outstanding and/or whether it will be necessary to re-depose Ms. Seltz.

In response to Defendants' motion, Plaintiffs concede that defense counsel should be permitted to re-depose Ms. Seltz. Plaintiffs object to the imposition of sanctions, however, stating that "the available documents were in fact produced." ECF No. 33 at 3.

Based on the undersigned's review of the record, it appears that the supplemental documentation provided by Ms. Seltz was discoverable and fell within the scope of SWEPI's requests for production of documents. ECF No. 219-1. Accordingly, Ms. Seltz' failure to produce the requested documentation in a timely manner constituted a discovery violation and prejudiced SWEPI by preventing its counsel from questioning her about potentially relevant information in a timely manner. SWEPI has also been prejudiced to the extent that the months-long delay in production following Ms. Seltz's deposition, and the disorganized manner of production, have caused defense counsel to expend additional time and effort to obtain relevant information and prepare its defense. To remediate this prejudice, the Court will grant SWEPI leave to re-depose Ms. Seltz so that defense counsel may, if he chooses, question her about any additional documentation she produced after the date of her original deposition. In addition, the Court will impose the costs of any supplemental deposition on Mr. Altomare, which costs shall

include the expense of any stenographer and/or videographer, the costs of the transcript, and reasonable compensation for defense counsel's time in completing any supplemental deposition.

### (ii) John and Dianna Erwin

SWEPI also seeks sanctions with respect to John and Dianna Erwin, claimants in this case who also leased their oil and gas interests to NTS Energy in 2013. During his deposition on August 2, 2022, John Erwin testified that his copy of the NTS Energy lease differed from the version that had been publicly recorded. Defense counsel placed a request on the record that Mr. Erwin produce a copy of his non-recorded lease with NTS Energy, as well as documentation reflecting any payments that he and his wife had received under that lease. ECF No. 219-3, 219-8.

Six months later, on February 6, 2023, Mr. Altomare produced via email a one-page federal tax form showing the Erwins' receipt of certain unidentified "royalties" in 2014. Mr. Mercer followed with a request that Mr. Altomare clarify the nature of these "royalties" and explain whether the Erwins possessed any additional documentation of payments relative to the leasing of their oil and gas rights, including from 2013 when they executed their lease with NTS Energy. Additionally, Mr. Mercer repeated his request for a copy of the Erwins' version of that lease. ECF No. 219-4. Mr. Altomare reportedly responded on February 18, 2023 in an email attaching eighteen (18) additional pages of documents. *See* ECF No. 219, ¶18.

In light of these new productions, defense counsel seeks to re-depose the Erwins, with costs to be borne by Plaintiffs' counsel. Mr. Altomare concedes that Mr. Mercer should be granted leave for a second deposition of either Mr. or Mrs. Erwin, but he disputes that sanctions are warranted "since the available documents were in fact produced." ECF No. 233 at 4; *see also* 233-4 and 233-5.

As with Ms. Seltz, the Court agrees that SWEPI's counsel should be permitted to re-depose the Erwins in order to question one or both of them[1] about the additional documentation that was belatedly produced months after the date of their original depositions. Again, as a measure to remediate any prejudice to SWEPI, the Court will impose the costs of any supplemental deposition on Mr. Altomare, which costs shall include the expense of any stenographer and/or videographer, the costs of the transcript, and a reasonable fee for defense counsel's time in completing the supplemental deposition.

### (iii) Kathleen C. Barrett, Executor of the Estate of Warren R. Capenos

Plaintiff Kathleen C. Barrett has filed a claim in this case in her capacity as executor of the estate of her father, Warren R. Capenos, who died in 2017. During her deposition, Ms. Barrett claimed that no one had asked her to search her files for documents concerning either of two parcels that are related to her father's leasing activities with SWEPI. ECF No. 219-9. Mr. Mercer twice asked that Ms. Barrett undertake such a search, once at the time of her deposition and again in subsequent correspondence sent to Mr. Altomare on January 24, 2023. ECF Nos. 219-3, 219-9.

Mr. Altomare subsequently produced to defense counsel an email from Ms. Barrett, dated August 19, 2022, in which Ms. Barrett stated the following:

> My husband has informed me that we would have disposed of any documentation or paperwork from 2011-2012. Once we make it past the IRS seven year cutoff, we dispose of files so as not to become packrats. Please let opposing counsel know that we have nothing further to provide.

---

[1] Mr. Mercer has indicated that he would agree to take the deposition of either Mr. or Mrs. Erwin instead of both, provided that the one who is most familiar with the documents and the leasing to NTS Energy testifies, *and* further provided that the non-testifying spouse agrees to be bound by the testimony provided. Unless these conditions are satisfied, Mr. Mercer states that he would want to depose both Mr. and Mrs. Erwin. The Court accepts and approves of these terms for a renewed deposition.

9

ECF No. 219-10.

SWEPI now asserts that Mr. Altomare failed to issue a preservation directive to Ms. Barrett, resulting in the loss of relevant evidence. Based on this allegation, SWEPI seeks spoliation sanctions in the form of a dismissal of Ms. Barrett's claim.

Mr. Altomare disputes that spoliation sanctions are warranted. He notes that Ms. Barrett had no involvement with her father's lease-related activities, which date back to 2012. He posits that, given the passage of time and Ms. Barrett's lack of direct involvement, it is not surprising that she could not locate any written communications between her father and representatives of SWEPI or other documentation concerning his efforts to lease the mineral rights in question. Insofar as Ms. Barrett reported the deliberate purging of paperwork that was more than seven years old, Mr. Altomare asserts that this involved only the personal email account utilized by Ms. Barrett and her husband. He argues that spoliation sanctions are not warranted in cases like this, where the loss of evidence resulted from routine purging rather than bad faith or fraudulent conduct.

Under the law of this circuit, spoliation occurs where (1) the evidence was in the party's control, (2) the evidence is relevant to the claims or defenses in the case, (3) the evidence was actually suppressed or withheld, and (4) the duty to preserve the evidence was reasonably foreseeable to the party. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). To be sanctionable, the spoliation must involve a showing of bad faith. *Duong v. Benihana Nat'l Corp.*, No. 21-1088, 2022 WL 1125392, at *2 (3d Cir. Apr. 15, 2022); *see Bull*, 665 at 79 ("[A] finding of bad faith is pivotal to a spoliation determination."); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) ("Such [an adverse] presumption or inference arises ... only when the [spoliation] or destruction [of evidence] was intentional, and indicates fraud and a

10

desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." (citation omitted, fourth alteration in original)). Moreover, "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed." *Bull*, 665 F.3d at 79 (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)).

Based on the record presented, this Court finds insufficient evidence to establish that spoliation sanctions are warranted. Although Mr. Altomare should have issued a preservation directive to both Mr. Capenos and, later, to Ms. Barrett, the Court has no grounds to conclude that any failure in that regard was done in bad faith or with intent to suppress relevant information. Similarly, the Court has no basis for concluding that Ms. Barrett purposefully destroyed relevant documentation, let alone that she did so with fraudulent intent. Consequently, the Court will not presently order that Ms. Barrett's claim be dismissed. On the other hand, it remains to be seen whether the lack of documentation impacts Ms. Barrett's ability to present a *prima facie* case or to rebut SWEPI's potential affirmative defenses. The Court will dismiss SWEPI's motion for spoliation sanctions without prejudice to be reasserted at a later point in these proceedings, should further record development warrant a revisiting of this issue.

### (iv) Robert Evans

Defendants also seek spoliation sanctions against Robert Evans in the form of an adverse inference concerning a lease he entered into with Halcon Energy Properties, Inc. ("Halcon") in 2013. During his deposition, Mr. Evans acknowledged having executed a lease agreement with Halcon for which he received payment based on the acreage of his property. ECF No. 225-1 at 44:7-46:12, 47:16-18, 48:11-14. In particular, he claimed that Halcon paid him $3000 per acre, whereas SWEPI had offered $3500 per acre. *See id.* at 44:10-13, 45:15-46:25. Mr. Evans

11

testified that he could not provide any documentation pertaining to the Halcon lease or the payment he received because he no longer possessed that information and his bank had purged its copies of any relevant records. *Id.* at 12:12-13:4, 48:15-49:8. Mr. Evans denied ever receiving instructions from Mr. Altomare to preserve documentation pertaining to his leasing efforts. *Id.* at 13:20-24, 49:9-13.

Given the loss of relevant payment information, SWEPI now requests, by way of sanctions, an adverse inference -- namely, that the lost documentation would have shown Mr. Evans received $3,250 per acre from Halcon in connection with the 2013 lease. Such an inference, if adopted, would ostensibly negate any loss that Mr. Evans might claim in this case, because SWEPI's own lease documents also reflect a payment figure of $3250 per acre.

Plaintiffs oppose SWEPI's request for a spoliation sanction. They maintain that SWEPI bears the burden of establishing bad faith in connection with the loss of evidence. They argue that SWEPI has not met its burden because Mr. Evans' actions do not suggest he was intent on hiding the truth about his losses.

As with Ms. Barrett, the Court finds that there is insufficient evidence to establish bad faith on the part of Mr. Evans or his counsel. Here, the record suggests that the Halcon lease involved a five-year term, Halcon never developed any wells on Mr. Evans' property during that term, and the lease simply expired at the conclusion of the five-year period. Neither Mr. Evans' actions in disposing of the Halcon lease documentation, nor Mr. Altomare apparent failure to issue a preservation directive concerning that information, evince an intent to deliberately withhold pertinent evidence. The Court will therefore refrain at this time from imposing an adverse inference concerning the payments Mr. Evans received under the Halcon lease. SWEPI, however, is not completely without recourse concerning Mr. Evans' claim for damages in this

case. In the event Mr. Evans' contractual claim proceeds to trial, defense counsel will be permitted to question him about: (i) the terms of the Halcon lease, (ii) the loss of relevant documentation concerning his alleged payment, (iii) any discrepancies in Mr. Evans' testimony that might reflect on the accuracy (or inaccuracy) of his recollection, (iv) the potential remuneration Mr. Evans *could* have received from Halcon in light of prevailing market prices, and (v) any other factors potentially bearing on Mr. Evans' duty to mitigate his losses. Should additional information come to light that warrants a revisiting of the requested spoliation sanction, the Court can take the matter up at such time.

  **(v)**  **Tracy Miliara**

We next consider Defendants' request for relief as it relates to Plaintiff Tracy Miliara. In the course of her deposition, Ms. Miliara acknowledged that she has utilized a certain email account since 2012, but she testified that she had never been asked to search that account for documentation relating to efforts to lease oil and gas rights to SWEPI. ECF 219-13 at 3, 27:18-28:1. She further denied being asked to see if she was in possession of documents bearing on her ownership of the oil and gas rights at issue in her case, including title reports or opinions. *Id.* at 5, 48:14-21.

Mr. Mercer demanded the production of such information in his January 24, 2023 letter to Mr. Altomare. ECF No. 219-3. This resulted in the production of 23 pages of documents, none of which involved emails from Ms. Miliara's email account or title-related documents pertaining to her claim. ECF No. 219-4. Mr. Mercer therefore repeated his request for this discovery in correspondence dated February 7, 2023. ECF No. 219-4. Mr. Altomare responded on February 20, 2023 that Ms. Miliara was in the process of conducting a search of her emails containing the terms "CX, Landowners' Group, Amegy Bank, SWEPI, Southeast Land Services,

Seneca Resources, title report, title search, title opinion and Oil and Gas Lease." ECF No. 219-14.

Defendants then filed their motion at ECF No. 219, objecting that Mr. Altomare had not responded to their request for title-related information and noting that Ms. Miliara' email search was being conducted nearly two years after the document requests had been served and some five months after her deposition had been taken. ECF No. 219 at 10 n. 9. Given the incompleteness of Ms. Miliara's discovery response, Defendants noted that they might seek to re-depose her, depending on the outcome of her ongoing search.

Plaintiffs subsequently responded to this motion with a copy of Ms. Miliara's April 25, 2023 email to Mr. Altomare, advising that she had "searched [her] email account, all folders, and [was] unable to find any other emails than what [she had] already provided." ECF No. 233-9. She further reported that she had "not found any documents (email or physical copies) pertaining to a title search" for her property. *Id.* Thus, Mr. Altomare posits that Rule 37 sanctions are not warranted, as the available documents were in fact produced.

Based on the record at hand, the Court finds no basis for assuming that Ms. Miliara is in possession of additional discoverable information. Accordingly, there are no further disclosures for the Court to compel in her case, nor does there appear to be any need for a supplemental deposition. In addition, the Court has no grounds for inferring that Ms. Miliara destroyed information pertinent to her claim, intentionally or otherwise. To the extent SWEPI seeks compelled disclosure or sanctions specifically against Ms. Miliara, those requests will be denied.

### (vi) Larry and Pamela Keverline

We next address SWEPI's effort to compel discovery from Plaintiffs Larry and Pamela Keverline. During his deposition on October 3, 2022, Larry Keverline testified about four

different groups of documents: (1) a mailing he may have received from a landowners' group in Fryburg area; (2) correspondence written to, or received from, Seneca Resources; (3) an oil and gas lease referenced in the Keverlines' deed; and (4) documents from Amegy Bank. ECF No. 219-15. Mr. Keverline was unsure if he possessed any of the aforementioned documents and stated that he had never been instructed by anyone to look for them, but it was agreed that he would do so following the conclusion of his deposition. *Id.*

Having heard nothing further in the ensuing months, Mr. Mercer inquired about these documents in his January 24, 2023 correspondence to Mr. Altomare, and demanded their production by February 6, 2023. ECF No. 219-3. In a follow-up letter to Mr. Altomare on February 7, 2023, Mr. Mercer acknowledged having received six new pages of information concerning the Keverlines. Mr. Mercer asked Mr. Altomare to confirm that: (1) five pages containing CX Energy headings were the documents Mr. Keverline had testified about receiving from a landowners' group in his area, and (2) a one-page letter from Seneca Resources was the only correspondence Mr. Keverline had referred to at his deposition. ECF No. 219-4. Mr. Mercer further inquired whether any search had been undertaken for documentation from Amegy Bank and, if so, who conducted the search and by what means.

On February 20, 2023, Mr. Altomare reported that:

1. the five pages with CX Energy headings are the documents Mr. Keverline testified [about] at his deposition;

2. he has provided the only correspondence from Seneca [R]esources that he has;

3. he has provided the only correspondence with Amegy that he has, and

4. he is presently conducting an expanded search of his emails, searching for CX, Landowners' Group, Amegy Bank, SWEPI, Southeast Land Services, Seneca Resources and Oil and Gas Lease.

15

ECF No. 219-16. Two days later, Mr. Altomare reported to SWEPI's counsel that Mr. Keverline's email search had not turned up any responsive documents and that "all [of his] correspondence was by phone or letter." ECF No. 233-10. Mr. Keverline had located one additional document, however, which was turned over to Mr. Mercer at that time.

In its motion at ECF No. 219, SWEPI objects that the Keverlines' email search was conducted "nearly two years after the document requests were served and four-and-a-half months after his deposition occurred." ECF No. 219 at 11 n. 10. Given this delay, SWEPI expresses its "serious concern that responsive emails may have been lost." *Id.*

As with Ms. Miliara, the record here does not support a finding that the Keverlines are presently in possession of discoverable information that has not previously been disclosed. Therefore, the Court cannot compel further disclosures on their part. While Defendants cite a concern that relevant information may have been destroyed, there is no evidentiary basis from which this Court can confidently draw such a conclusion. Nor would there be any grounds to impose a spoliation sanction, as the Court cannot infer bad faith or fraudulent intent on the part of the Keverlines or their counsel. But to the extent Mr. Mercer perceives a need to re-depose either of the Keverlines regarding subsequently produced information, the Court would grant them leave to do so, with the same imposition of costs upon Plaintiff's counsel as has previously been articulated relative to Ms. Seltz and the Erwins.

### (vii)   Cynthia Tygert

SWEPI also states concerns regarding discovery received from Cynthia Tygert. Both Mrs. Tygert and her now-deceased husband, David T. Tygert, were named as Plaintiffs to this lawsuit. In her deposition, Mrs. Tygert referenced an email account of her husband's which dated back to 2011 or 2012 but was no longer being used. Mrs. Tygert was uncertain whether

16

any search had been made of that account for responsive documents, and she stated that no one had specifically instructed her to preserve and maintain documentation regarding the Tygerts' efforts to lease their oil and gas rights. ECF No. 219-17. Consequently, Mr. Mercer made a demand in his January 24, 2023 letter that Mrs. Tygert search her late husband's email account and produce any documents relevant to her claim. ECF No. 219-3.

On February 6, 2023, Mr. Altomare forwarded to defense counsel fifty-two (52) pages of documentation from Mrs. Tygert, only five of which constituted new information. Included in the new information were two emails from Mr. Tygert's old email account and a form letter the Tygerts had received from Southeast Land Services. ECF No. 219-4. Upon receiving this information, Mr. Mercer sent follow-up correspondence to Mr. Altomare, inquiring why the forty-seven pages of old information had been produced, how the five new pages were located, and whether any other responsive docs had been identified. *Id.* Mr. Mercer also posed a question concerning leasing documents that Mrs. Tygert had produced, which bore the name "John Martin." *Id.*

Mr. Altomare forwarded Mr. Mercer's inquiries to Mrs. Tygert's son, Joshua, who then conducted a further search of his late father's email account and explained in an email his search methodology. ECF No. 233-13. After receiving Joshua's responses, Mr. Altomare wrote to Mr. Mercer on February 15, 2023, attaching a December 6, 2011 email that the Tygerts had received from a landowners' group and advising the following:

1. Because Mr. Tygert is deceased and his widow did not participate in the SWEPI negotiations, I wanted to be sure that we had found all the documents responsive to your production requests. Josh Tygert, the Tygert's adult son, was asked by me to comb his father's files, and the documents he found were the ones I sent you.

2. The John Martin draft and lease were apparently distributed to the members of the [landowners'] negotiating group as examples.

17

> 3. As to the Southeast instruction sheet, I see no email by which it was transmitted. As to the December 11 email Josh assured me that there was no other email in his father's account.

*Id.*; *see* ECF No. 233-12.

In its motion at ECF No. 219, SWEPI focuses on the "John Martin" documents referenced in paragraph 2 of Mr. Altomare's February 15, 2023 email. Specifically, SWEPI expresses "concern about how the information in "2" of Attorney Altomare's email was discerned," given that Mrs. Tygert did not participate in the lease negotiations. ECF No. 219 at 12, ¶40. But as Mr. Altomare points out, SWEPI's concern appears to be "resolved" by reference to an email chain which has been produced by Mrs. Tygert to SWEPI, dated December 5 and 6, 2011. ECF No. 233-12. This document reflects that one Garrett Westover sent a mass email on December 5, 2011 to a number of potential lessors, including the late Mr. Tygert, attaching the "**FINAL** sample Lease and Addendums [sic] being offered by SHELL." *Id.* The email references a group meeting, to occur later that same week, where questions could be heard and answered concerning the sample lease and Shell's offer. It thus appears that the "John Martin" documents were sent as sample lease documents to a group of potential lessors, including Mr. Tygert, and that Mr. Tygert forwarded this email to another individual on December 6, 2011 using the old account referenced by Mrs. Tygert in her deposition. Based on the record as it currently stands, the Court perceives no remaining discovery deficiency concerning Mrs. Tygert.

### III.   CONCLUSION

Based on the foregoing discussion, the Court will deny SWEPI's motion at ECF No. 224 without prejudice to be reasserted at a later stage of these proceedings, should future circumstances warrant the Court revisiting SWEPI's request for spoliation sanctions.

SWEPI's motion at ECF No. 219 will be granted to the extent that Defendants will be given leave to conduct additional depositions of Plaintiffs Carol Spellman Seltz, John and/or Dianna Erwin, and Larry and/or Pamela Keverline, should defense counsel determine that such depositions are necessary. As to each supplemental deposition, Mr. Altomare shall bear the cost of the court reporter, the videographer, the transcript, and two hours of Attorney Mercer's time. In all other respects, the Defendants' motion at ECF No. 219 will be denied.

Because the concerns set forth in Defendants' Motion to Compel and for Sanctions, filed at ECF No. [115], are largely addressed by the sanctions already imposed herein or are otherwise moot, that motion will be dismissed without prejudice.

An appropriate order follows.

Date: <u>July 25, 2023.</u>

_____
Susan Paradise Baxter
United States District Judge